**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| In Re:<br>Laura M. Jones,<br>    Debtor<br>_____ | |
| Laura M. Jones,             )<br>    Plaintiff.            )<br>v.                           )<br>                             )<br>Apple Federal Credit Union,   )<br>    Defendant.          )<br>_____) | Chapter 13 |
| Laura M. Jones,             )<br>    Plaintiff.            )<br>v.                           )<br>                             )<br>Capital One Auto Finance,    )<br>    Defendant.          )<br>_____) | Case No: 09-14499-SSM |
| Laura M. Jones,             )<br>    Plaintiff.            )<br>v.                           )<br>                             )<br>Capital One,                )<br>    Defendant.          )<br>_____) | |

**DEBTOR'S MEMORANDUM IN SUPPORT OF DEBTOR'S MOTIONS FOR
CONTEMPT FOR VIOLATION OF THE CONFIRMATION ORDER**

    Debtor Laura Jones filed for Chapter 13 Bankruptcy Protection on June 4, 2009. The current amended plan in this case was confirmed by the court on January 15, 2010. The confirmed Chapter 13 plan specified that "[i]f a creditor reports to the consumer reporting agencies the receipt and timeliness of the payments on any debt dealt with in this plan, then the claim as altered by the confirmed plan rather than the original loan agreement, should form the

basis for the report"[1] Debtor's counsel modeled this plan language on the holding in the unreported decision In re: Dawn Luedtke, Case No. 02-35082-SVK (Bankr. E.D. Wis., July 31 2008), docketed in this case at number 67. This plan language is consistent with the 2009 directives of the Consumer Data Industry Association, the trade association of credit reporting agencies, which has issued guidelines for how debts should be reported once the debtor has filed for Chapter 13 protection and has had a plan confirmed by the court.[2]

**Apple Federal Credit Union**

As required, Apple Federal Credit Union received notice of the proposed plan, and of the confirmation hearing. Apple Federal Credit Union filed two proofs of claim in the present case, claim numbers 12 and 13 for $481.20 and $6552.66 respectively. In spite of the order confirming the amended plan, Apple Federal Credit Union has continued to report the debts as charged off and written off.[3]

**Capital One Auto Finance**

Capital One Auto Finance received notice of the proposed plan, and of the confirmation hearing. Capital One Auto Finance filed a proof of claim, claim number 3, in the amount of $8127.44. Debtor's plan called for the surrender of the vehicle that secured the debt, and to date the Chapter 13 Trustee has paid $235.71 on this now unsecured claim. Capital One Auto Finance continues to report the status of the debt at "Petition for Chapter 13 Bankruptcy. $6,674 Past Due as of Mar 2011."[4]

---

[1] Case No. 09-14499-SSM <u>Chapter 13 Plan and Related Motions</u>, filed 11/17/2009, entered in this case at Docket No. 39. Counsel modeled this plan language from the holding in the unreported decision In re: Dawn Luedtke, Case No. 02-35082-SVK (Bankr. E.D. Wis July 31 2008), Docketed in this case at number 67.
[2] See Credit Reporting Resource Guide Frequently Asked Questions Nos. 27 and 28, Revised December 2009, attached here as Exhibit 1
[3] Experian Credit Report for Laura Jones dated April 14 2011, attached here as Exhibit 2.
[4] Id.

**Capital One**

Capital One received notice of the proposed plan, and of the confirmation hearing. Capital One filed a proof of claim at claim number 6 in the amount of $2997.28. To date the Chapter 13 Trustee has paid $86.93 on this claim. Capital One continues to report the status of the debt as "Petition for Chapter 13 Bankruptcy. $$2,786 written off. $2,997 past due as of Apr 2011."[5]

**An Order Confirming a Chapter 13 Plan is A Final Judgment**

The Bankruptcy Court's order confirming the plan in this case was a final judgment[6] from which the creditors did not appeal. The Debtor's Chapter 13 plan sets forth the payments she is required to make to the Chapter 13 Trustee, the duration of those payments, and the manner in which the Trustee must distribute those funds.

According to 11 U.S.C. § 1327(a) confirmation of a plan binds the Debtor and each of the Debtor's creditors,[7] and a violation of the confirmation order is an act of contempt which may be remedied by the courts authority under 11 U.S.C. § 105(a).

**Creditors are in Contempt of the Confirmation Order**

The Consumer Data Industry Association has published guidelines on the way in which accounts include in Chapter 13 bankruptcies are to be reported. When the plan is confirmed, the

---

[5] Id.
[6] See, e.g., Valley Historic Ltd. P'ship. v. Bank of New York, 486 F.3d 831, 838 (4th Cir.2007) ("A bankruptcy court's order of confirmation is treated as a final judgment with res judicata effect, binding the parties by its terms and precluding them from raising claims or issues that they could have or should have raised before confirmation."); Piedmont Trust Bank v. Linkous (In re Linkous), 990 F.2d 160, 162 (4th Cir.1993) ("[A] bankruptcy court confirmation order generally is treated as res judicata."); In re Harvey, 213 F.3d 318, 321 (7th Cir.2000) ("It is a well-established principle of bankruptcy law that a party with adequate notice of a bankruptcy proceeding cannot ordinarily attack a confirmed plan ... [citation omitted]. The reason for this ... mirrors the general justification for res judicata principles[.]"); Donnelly v. Official Comm. of Unsecured Creditors, 73 Fed.Appx. 568, 572 (4th Cir.2003)("Indeed, a bankruptcy court's order of confirmation is treated as a final judgment with res judicata effect.").
[7] 11 U.S.C. 1327(a) states that"[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan and whether or not such creditor has objected to, has accepted, or has rejected the plan."

current balance reported should be the "Chapter 13 plan balance" and the "Scheduled Monthly Payment" should be reported as the "Chapter 13 plan payment amount." And the Past Due amount should be "Zero"[8]

"Determining if a party has committed civil contempt involves essentially only consideration of whether the party knew about a lawful order and whether he complied with it."[9] When, as here, the creditor reports that the Debtor owes amounts according to the original loan, those reports are not accurate and violate the confirmation order.[10]  Sanctions for contempt may either take the form of civil contempt, sanctions not otherwise authorized in the Code, or the form of general damages.[11]  A sanction of civil contempt must not be punitive, but it usually includes costs and attorney's fees inasmuch as those items are compensation for an injured party regarding the losses it suffered as a result of the other's contemptuous behavior.[12]

**Permitting a Creditor to Continue to Misreport the Status of a Debt is Contrary to the Purpose of the Bankruptcy Code**

"Allowing creditors . . . to report the original amount of the loan and that the plan payments are excessively late based on the original loan terms . . . is contrary to the spirit and purposes of Chapter 13." [13]

Chapter 13 Bankruptcy plans run for 36 or 60 months.  During that time it is common for a debtor to require the use of credit for the replacement of a car that is no longer serviceable as it was at the outset of the plan.  Where, as here, the debtor has obtained permission of the court to

---

[8] See Credit Reporting Resource Guide Frequently Asked Questions Nos. 27 and 28, Revised December 2009, attached here as Exhibit 1.
[9] Burd v. Walters (In re Walters), 868 F.2d 665, 670 (4th Cir. 1989), holding that a bankruptcy court's civil contempt powers are incidental to Congress's statutory grant of powers in the Bankruptcy Code and that giving bankruptcy courts the power of civil contempt did not offend notions of Constitutional separation of power.
[10] Luedtke, Bankr E.D.Wis. See Dendy, 2008 Bankr. LEXIS 1845 at 17-18.
[11] 2 Collier on Bankruptcy ¶ 105.04[7][b] (Lawrence P. King et al. eds., 15th rev. ed. Matthew Bender 2004).
[12] Hubbard v. Fleet Mortgage Co., 810 F.2d 778, 781-82 (8th Cir.1987) ("The commonly stated distinction is that if the penalty is to compensate the complaining party or to coerce the defendant into complying with the court's orders, the contempt is civil, while if the penalty is punitive, intended to vindicate the authority of the court, then the contempt is criminal.")
[13] In re Luedtke, at 4.

finance a new car the damage that continued harmful reporting has caused will require the debtor to accept higher financing interest rates.[14]

A significant majority of confirmed Chapter 13 plans ultimately fail.[15] An informal review of the Chapter 13 Trustee Audited Annual Reports suggests that nationally more than 60% of Chapter 13 plans do not ultimately succeed.[16] When Debtors are forced to obtain financing at higher rates there is a greater burden on the debtor's budget making it all the more likely that the plan will ultimately not succeed.

**Conclusion**

It has been said that the central purpose of the Code is to provide a procedure for debtors to reorder their affairs, make peace with their creditors, and enjoy "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt."[17] When a creditor has been on notice for more than 18 months as to the proper manner in which to report a debt, but nevertheless continues to misreport in violation of both the Confirmation Order as well as standard industry practice, that central purpose is being frustrated.

Because Creditors Apple Federal Credit Union, Capital One Auto Finance, and Capital One have all been in direct and repeated violation of the holding in the Luedtke case, the Confirmation Order in this case, and credit reporting industry standards, Debtor asks this court to

---

[14] In this case, Ms. Laura Jones was ultimately able to obtain auto financing at 25%, significantly higher than prevailing rates. In a national survey of auto loan rates conducted on or around June 1, 2011 Bankrate.com reports that "[t]he average rates for 48-month new-car loans and 60-month new-car loans each fell 4 basis points to 5.49 percent and 5.52 percent, respectively" See http://www.bankrate.com/finance/auto/national-auto-loan-rates-for-june-2-2011.aspx.

[15] See Till v. SCS Credit Corp., 541 U.S. 465, 493 (2004) (Scalia, J., dissenting) (citing failure rate between 37% and 60% for chapter 13 plans); In re Jemison, No. 07-40761, 2007 Bankr. LEXIS 3107, at *10 (Bankr. N.D. Ala. Sept. 6, 2007) (explaining majority of local confirmed chapter 13 plans never completed); Scott F. Norberg, Consumer Bankruptcy's New Clothes: An Empirical Study of Discharge and Debt Collection in Chapter 13, 7 AM. BANKR. INST. L. REV. 415, 440 (1999) (stating one-third completion rate in Southern District of Mississippi); William C. Whitford, The Ideal of Individualized Justice: Consumer Bankruptcy as Consumer Protection, and Consumer Protection in Consumer Bankruptcy, 68 AM. BANKR. L.J. 397, 411 (1994) (reporting completion rate 31%).

[16] Chapter 13 Trustee Audited Annual Reports, Available at: http://www.justice.gov/ust/eo/private_trustee/library/chapter13/index.htm

[17] Local Loan Co. v. Hunt, 292 U. S. 234, 244 (1934).

hold these Creditors in contempt and to order any other relief this Court deems equitable and just.

          Respectfully Submitted,

          Laura Jones, by Counsel

/s/Mark J. Sullivan_____
Mark J. Sullivan VSB 79752
Law Offices of Robert Weed
Counsel for Laura Jones
46950 Community Plaza, Suite 216
Sterling, VA 20164
Telephone:  703-421-7111
Facsimile:  703-563-9658
Email: markjsullivan@gmail.com